UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY TAYLOR,                                Civil Case No. 02-74030
                                               Criminal Case No. 97-80620
          Petitioner,

VS.                                            HONORABLE GERALD E. ROSEN
                                               HONORABLE STEVEN D. PEPE

UNITED STATES OF AMERICA,
          Respondent.
_____/

REPORT AND RECOMMENDATION

Anthony Taylor ("Petitioner") is a prisoner in federal custody.  He was convicted on two counts of distribution of cocaine base and one count of conspiracy to distribute cocaine base; he was also found not guilty of two distribution charges.  *See* Amended Judgment (Docket # 148).  He is currently serving a 292 month sentence, the minimum of the guideline range.  Proceeding *pro se*, Petitioner, on October 8, 2002, filed a petition for a writ of habeas corpus under 28 U.S.C. §2255. He was permitted to amend his petition on June 23, 2003.  He did not request appointment of counsel on either occasion.  All pretrial proceedings have been referred to the undersigned pursuant to 28 U.S.C. §§ 636(b)(1)(A),(B).  An evidentiary hearing was held on July 21, 2003, and a supplemental evidentiary hearing was held on February 2, 2005, at which Plaintiff was represented by appointed counsel.  The parties filed post-hearing pleadings through May 2005.

I.    BACKGROUND FACTS

Plaintiff was offered a 14-year plea bargain, but chose to go to trial. Judge Rosen found that Petitioner distributed between 500 and 1500 grams of crack cocaine, which resulted in a base offense level of 36.  That was enhanced to 40 after finding he had a leadership role.  The sentencing range became 292 to 365 months.  He was sentenced to 292 months.

### A.     <u>Direct Appeal of Conviction</u>

In his appeal, Petitioner raised four arguments which were rejected by the Sixth Circuit. 2001 U.S. App. LEXIS 10766 (2001) (unpublished); *see* Gov't Resp., Ex. A (Docket # 173).  First, Plaintiff argued that the trial judge improperly prevented Plaintiff's counsel from impeaching co-defendant Griffin on alleged bias.  This claim involved Griffin's bond hearing testimony that Petitioner "probably had something to do with" Griffin being shot and that he believed Petitioner shared "some" of the responsibility for the shooting.  *See* Petition, Ex. 2 (Docket # 168).  Because the Circuit Court found that the record reflected no motions, discussions, or rulings on this issue and because Petitioner did not avail himself to FED. R. APP. P. 10(c) – which allows an appellant to make a statement of the proceedings from the best available means, including his own recollection, when proceedings are not recorded or a transcript is unavailable – the Sixth Circuit declined to review this issue.

Second, Petitioner argued that the district court erred in refusing to instruct the jury on the credibility of a drug-addicted informant.  This is not at issue on the present motion.

Third, Petitioner argued that his sentence was too long due to a leadership enhancement of four points.  The Sixth Circuit, citing  U.S.S.G. § 3B1.1(a) (which permits a four-level leadership enhancement if the defendant was an organizer or leader of criminal activity involving at least five participants) and *United States v. Owusu*, 199 F.3d 329 (6th Cir. 2000), found that such an enhancement was proper.   It concluded that the record demonstrated that the enhancement was appropriate.  The record supported findings that Petitioner was: involved in the conspiracy and employed couriers and brokers for controlled drug sales; supplied drugs and took money from those couriers after the sales; kept a bulk of the profit; took the phone and explained why a delivery was short when an undercover agent called a co-defendant to complain about the delivery; conducted counter-surveillance during the third sale; and followed co-defendants to the fourth sale, requiring

2

the co-defendant carrying the drugs to ride in Petitioner's car because the other co-defendant's car had a broken windshield which could attract police attention.

Fourth, Petitioner challenged his sentence on *Apprendi* grounds.[1] The government conceded that this was a necessary consideration because the district court instructed the jury that it only needed to find some "measurable amount" of crack involved rather than specific amounts (Petitioner was sentenced to 292 months, but if Petitioner's conviction was for less than five grams, the maximum penalty he could have received under § 841(b)(1)(C) would have been 20 years, or 240 months). Petitioner did not object at trial, so the decision was reviewed for plain error.

Following *United States v. Page*, 232 F.3d 536 (6th Cir. 2000), the Sixth Circuit held that because Petitioner was convicted of distribution under § 841 and conspiracy under § 846, a remand for re-sentencing would require the convictions to run consecutively, rather than concurrently, until they reached the minimum guideline range.[2] Here, because Petitioner's consecutive sentences

---

[1] In *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." The *Apprendi* rule is not triggered so long as the defendant is sentenced below the prescribed statutory maximum; thus, the rule is not applicable if a sentence is based on a fact that raises or imposes the statutory minimum, so long as the sentence imposed does not exceed the statutory maximum.

[2] In *Page*, the Sixth Circuit relied on the Sentencing Guidelines to determine that, in that situation, the sentence for the distribution count would run consecutively, not concurrently, to the conspiracy count. *Page*, 232 F.3d at 544. *See* U.S.S.G. §§ 5G1.2(d); 3D1.2; 3D1.3. U.S.S.G. § 5G1.2(d) states:

> [i]f the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects, sentences on all counts shall run concurrently, except to the extent otherwise required by law.

*Id. Page* noted that *Apprendi* rejected a similar argument; however, in *Apprendi*, the Court was not reviewing for plain error as it was in *Page* (and here). *Page*, 232 F.3d at 544-45.

3

under U.S.S.G. § 5G1.2(d) would still add up to 292 months, there was no plain error warranting the Court of Appeals to modify the sentence.

### B.  **Plaintiff's Claims in the § 2255 Petition**

Petitioner raises seven separate claims in his petition, five of which are based on ineffective assistance of counsel.  Before the February hearing, Petitioner's counsel submitted a memorandum listing six issues, and those issues were addressed in post-hearing briefs.  Petitioner argues that (1) his trial counsel did not relay a realistic view of the case, (2) trial counsel did not object to inaccuracies in the pre-sentence investigative (PSI) report and did not share the report with Petitioner, (3) trial counsel did not cross examine a key witness for bias and entered into a stipulation regarding that witness's prior testimony without seeking Petitioner's consent, (4) Petitioner was sentenced under the wrong provision, (5) appellate counsel was ineffective for failing to include a bail hearing transcript in the joint appendix (this argument will be addressed in conjunction with issue (3)), and (6) *Blakely v. Washington,* 124 S. Ct. 2531 (2004) and *United States v. Booker*, 125 S. Ct. 738 (2005) require a new sentencing.  Those issues will be addressed in the body of this Report and Recommendation.  Other issues raised in the original petition, but not raised by counsel in the supplemental hearing and briefing, are considered to have been waived by Petitioner in consultation with his appointed counsel.  Those issues are, however, addressed in the appendix to this report and recommendation in case this assumption is mistaken.

## II.   ANALYSIS

### A.  **Standard for Evidentiary Hearing**

When reviewing a § 2255 motion:

> [u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

4

28 U.S.C. § 2255.

Failure to provide for an evidentiary hearing when the record before the Court does not conclusively show that the prisoner is not entitled to relief is grounds for remand. *Machibroda v. United States*, 368 U.S. 487, 495-96 (1962); *Duhart v. United States*, 476 F.2d 597, 598 (6th Cir. 1973). The petitioner is not guaranteed a "full hearing" nor the right to be present at the hearing; these decisions are left to the district court's discretion. *Machibroda*, 368 U.S. at 465-69. This was affirmed in *United States v. Todaro*, 982 F.2d 1025 (6th Cir. 1993) (per curiam):

> Section 2255's reference to a hearing does not require a full blown evidentiary hearing in every instance. . . . Rather, the hearing conducted by the court, if any, must be tailored to the specific needs of the case, with due regard for the origin and complexity of the issues of fact and the thoroughness of the record on which (or perhaps, against which) the section 2255 motion is made.

982 F.2d at 1030. An evidentiary hearing is not necessary to resolve a pure legal issue. *Bryan v. United States*, 721 F.2d 572, 577 (6th Cir. 1983).

### B.      6th Amendment Right to Counsel

#### 1.      Standard

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *See id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*. at 697. If "it is easier to dispose of an

ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.*

With respect to the performance prong of the *Strickland* inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the fact finder, "whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." *Id.* at 695.

### 2.   Applying the Standard to Plaintiff's Claims

#### i.   *Petitioner claims counsel was ineffective because he did not accurately convey a realistic view of case.*

Petitioner argues that his trial counsel was ineffective because he failed to tell Petitioner that the chances of winning were only 50/50. Had counsel done that, Petitioner argues, Petitioner would have taken the 14-year plea bargain offered by the Government and this is prejudicial because it resulted in him getting a 24 year sentence, rather than 14 years.

At the February 2, 2005, evidentiary hearing, Petitioner testified that his attorney mislead him by telling him that he had a good chance at trial, and not relaying that the situation changed, and his chances rose and fell. He believes his chances fell dramatically and he was not informed of this fact.

6

At the evidentiary hearing, Petitioner's trial counsel Richard Rosenberg testified that he usually provides discovery documents directly to his clients, but could not remember whether he did that in this case, although he believes that he did. Mr. Rosenberg testified that he informed Petitioner that he had at least a 50/50 shot, but that if he was convicted he would serve a sentence in a federal penitentiary. Further, Petitioner had rejected the plea with his two previous attorneys. Mr. Rosenberg believed his analysis of the case was accurate because he went over all of the evidence, including the statements of the co-defendants, taped evidence, and similar cases. He had a good background with conspiracy cases, and relied on it in forming his opinion. Mr. Rosenberg noted that as in all cases, the chances of winning changed as evidence was discovered, and while Petitioner's chances of success went from high to low, at no time did he feel they fell below fifty percent. He notes that Petitioner did prevail on some counts naming him; Petitioner was acquitted on two of the five counts he faced at trial.

Petitioner's claim that Mr. Rosenberg's analysis of the case was inaccurate is not sufficient to maintain a claim of ineffective counsel. Petitioner has not pointed to any evidence in the case that would make the prediction of his counsel seem unrealistic. Nor has he provided any opinion of an experienced criminal defense counsel to that effect. Here, Mr. Rosenberg's testimony that he analyzed evidence and relied on his past trial experience in determining the likelihood of success is credible, is not challenged, and supports the notion that he provided effective counsel to Petitioner. *See Humphress v. United States*, 398 F.3d 855 (6th Cir. 2005). Also, at the hearing, Petitioner acknowledged receiving the discovery materials himself, so he was aware of the information to be used against him independent of the advice of counsel.

Obviously, it is difficult to prove that Mr. Rosenberg's analysis of a case and chances of prevailing was incorrect. Yet, it takes more than merely asserting it to be the case in the light of

hindsight.  If that were sufficient, crediting Petitioner's argument would place all trial based convictions at risk.  Absent some showing that the estimates of trial outcome were naive or made recklessly without any investigation, an erroneous prediction of the outcome of a trial is not the standard for attorney competence.

### ii.    *Arguments regarding PSI report*

Petitioner argues that an objection should have been made to the presentence report regarding drug amounts and enhancement for a leadership role.  He argues that he was denied a fair sentencing because portions of the PSI report addressing acquitted conduct were not removed before sentencing.

#### a.    **Counsel's failure to object to Paragraphs 12, 16, and 19 of the PSI report**

Petitioner argues in his March 23, 2005, supplemental brief that his attorney should have objected to Paragraph 12 of page 6 and paragraphs 16 and 19 of page 7 of the PSI report.  Claims about objections to other paragraphs previously raised have been abandoned (paragraph 21 of page 8 and paragraph 30 of page 9 were withdrawn during the evidentiary hearing).  Petitioner argues that Paragraph 12 (referring to a March 19, 1996, two ounces sale of crack cocaine by a co-defendant on which Petitioner was found not to have aided and abetted) should not have been included because it relates only to Count II, on which Petitioner was acquitted.  The trial judge stated that he would not hold defendant accountable for acquitted conduct.  Petitioner further argues that Paragraph 16 and 19 of the PSI  should have been stricken because they relate only to Count VI (a  July 11, 1996, incident involving a co-defendant and five or more grams of cocaine base), which was dismissed before trial.  Paragraph 16 and 19 indicate that Petitioner was the source of these drugs.  The

Government counters that Petitioner's counsel did object to the PSI report generally in a lengthy brief attached as exhibit four to Petitioner's March 23 brief.

In 1999, at the time of sentencing, the judge was permitted by Statute to consider *all* trial evidence, even if a jury apparently discounted it. *See* 18 U.S.C. 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence"); *see also United States v. Booker*, 125 S. Ct. 738 (2005) (writing that Congress intended judges to consider information independent from juries in sentencing).

Mr. Rosenberg's failure to object specifically to paragraphs 12, 16, and 19 of the PSI report does not constitute ineffective assistance of counsel. Rosenberg objected to the PSI in a brief dated April 19, 1999, arguing that his client should not be held responsible for anything other the two meetings he attended.[3] He further argued, on page 10 of the same brief, that the testimony of the witnesses should not be believed because, among other reasons, the jury acquitted him of two charges where their testimony was vital. Moreover, during the sentencing hearing, Mr. Rosenberg put forth what the Court acknowledged as "good legal arguments" against considering anything other than evidence for which he was convicted (May 3, 1999, Sent. Trans., pp. 25-36, 41-42).

While Judge Rosen noted that he would exclude the March 4 and 19 sales for which Petitioner was acquitted,[4] he nonetheless found by a preponderance of evidence presented at trial

---

[3] Counsel argued that at most Petitioner should be held responsible only for the 121.2 grams of cocaine at which he was present during the DEA investigation, for a base offense level of 32, and not for all of the sales, involving 115.8 additional grams for a base offense level of 34.

[4] At sentencing, Judge Rosen stated, "in this case, there was testimony to support [convictions on those charges] but the jury, for whatever reason, found otherwise as to the March 4th and March 19th transactions, and for that reason, I am not going to hold [Petitioner] accountable for those two quantity levels." (Sent. Trans., p. 35).

that Mr. Taylor's involvement was "well beyond a half a kilogram" needed to get to a base offense level of 36 (Sent. Trans., p. 36). Judge Rosen noted that co-conspirator David Griffin testified to seeing Petitioner "with a half a kilo at one time" (*Id.*). While the jury may have disbelieved certain Griffin's testimony, Judge Rosen could accept other parts as credible. The sentencing judge decided, in spite of Rosenberg's arguments, to consider the "totality of the evidence" in deciding that Petitioner was responsible for 500 grams of crack cocaine. Thus, notwithstanding his failure to object to specific paragraphs of the PSI report, Mr. Rosenberg's arguments against the PSI report do not constitute ineffective counsel. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) ("[t]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."). Where a judge decides not to consider the evidence of acquitted charges, Petitioner's counsel cannot be deemed ineffective in failing to challenge certain portions of the PSI that includes quantities of drugs involved in these charges because Petitioner was not prejudiced by the inclusion of the paragraphs in the report.

While Petitioner's trial counsel at the hearing acknowledged that he could have made specific objections to those paragraphs, Judge Rosen did not rely on the portions of the PSI report to which Petitioner objects. Therefore, even if it was found that trial counsel should have made more specific objections, Petitioner was not prejudiced and any such error did not deprive Petitioner of his Sixth Amendment rights. *See, id.* at 694 (holding that in order to establish the ineffective assistance of counsel, petitioner must show "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

b.     **Counsel's alleged failure to discuss the PSI Report with Petitioner**

Petitioner additionally argues that because he had no input in responding to the PSI report, he was denied effective assistance of counsel. Mr. Rosenberg testified that he thought that he had provided a copy of the PSI report to his client, and that this was generally his standard practice to do so. The Government does not answer petitioner's claim directly. Petitioner does not identify any portions of the PSI he would have wanted challenged other than those noted above. Yet, as discussed above, because (a) his counsel responded adequately to the PSI report, challenged use of various drug quantities being used in the calculations and challenged Petitioner being considered in a leadership role, and (b) because Judge Rosen did not use the quantities of drugs involved in the challenged paragraphs (12, 16, and 19), Petitioner was not prejudiced. Thus even if counsel failed to review the PSI report with Petitioner,[5] Petitioner has not shown prejudice resulting from this and there was no Sixth Amendment violation. *See Strickland*, 466 U.S. at 687.

### c.   Judge Rosen's failure to inquire into whether Counsel discussed PSI report with Petitioner

In Petitioner's earlier motion to amend and in his post-hearing reply brief, he argues that the record does not contain discussion of whether Petitioner and Mr. Rosenberg read and discussed the PSI report. He claims that a sentencing court's failure to ensure that the accused had read and discussed the PSI report with counsel required a new sentencing hearing, regardless of whether the accused could show actual prejudice.

At the February evidentiary hearing, Mr. Rosenberg recounted that he thought he had provided a copy of the PSI report to Petitioner, as he "almost always" did, so that Petitioner could "take it home, think about it, and come back and talk it over." Feb. 2, 2005, Evid. Hrg., p. 35. He

---

[5] As will be addressed below, Petitioner's recollection regarding the events of his case has not always proven to be accurate.

recalled a telephone discussion with Petitioner about the report, and that Petitioner had spoken to his assistant about the report.

Petitioner relies on FED. R. CRIM. PROC. 32(c)(3)(a), which has since been amended such that the applicable provision is now Rule 32(i)(1)(A).  It states:

> At sentencing, the court:
>
> (A) must verify that the defendant and the defendant's attorney have read and discussed the presentence report and any addendum to the report;
>
> (B) must give to the defendant and an attorney for the government a written summary of--or summarize in camera--any information excluded from the presentence report under Rule 32(d)(3) on which the court will rely in sentencing, and give them a reasonable opportunity to comment on that information;
>
> (C) must allow the parties' attorneys to comment on the probation officer's determinations and other matters relating to an appropriate sentence; and
>
> (D) may, for good cause, allow a party to make a new objection at any time before sentence is imposed.

Petitioner cites two cases which both held that the judge's failure to ensure that the defendant and his counsel had read and discussed the PSI report required a remand for a new sentencing hearing, *United States v. Osborne*, 291 F.3d 908 (6th Cir. 2002) (remanding case for new sentencing where "[t]he district judge did nothing more than state summarily that he was accepting the sentencing range as set forth in the presentence report."), and *United States v. Mitchell*, 243 F.3d 953 (6th Cir. 2001).  In *Mitchell*, the trial court judge asked the defense counsel whether he had any objections to the PSI report, but did not ask whether he had discussed the report with his client.  It was clear that the defense counsel had read and analyzed the report, but it was not apparent whether he had discussed it with the defendant.  A remand for re-sentencing was required even though no prejudice was shown, because:

>     the district court failed to determine whether Mitchell even read his
>     presentence report, much less whether he was afforded the
>     opportunity to discuss it with his counsel.  Our holding that district
>     courts must literally comply with Rule 32(c)(3)(A) does not alter our
>     long-held rule that they need not affirmatively inquire as to whether
>     a defendant has read and discussed his presentence report with
>     counsel, although we urge district courts to discourage non-
>     meritorious appeals by simply making such an inquiry a regular part
>     of the sentence hearing. . . .  Here, the district court had a duty to
>     determine that Mitchell and his attorney had read and discussed
>     Mitchell's presentence report. The failure to do so requires
>     resentencing.

*Id.* at 955.

The *Osborne* Court dealt with the same issue.  There, Osborne's attorney argued that the PSI report's recommended sentence violated both *Apprendi* and the Sentencing Guidelines.  *Osborne*, 291 F.3d at 911.  While it was apparent that Osborne and his counsel were aware of at least one issue contained in the report, counsel's argument did not require any discussion of the contents of the PSI report, and no other issues were discussed at the hearing.  The court's review of the hearing transcripts failed to reveal any statement that provided verification that Osborne and his attorney had read and discussed the PSI report.  There was no opportunity for Osborne's counsel to provide verification that he and Osborne had read and discussed the report, and the court did not ask.  The Sixth Circuit vacated Osborne's sentence and remanded his case for re-sentencing.  *Id.*

In the present case, no specific question was posed to defense counsel regarding whether they had read and discussed the PSI report with Petitioner.  Counsel submitted a set of objections to PSI report, as discussed above.  He highlighted a couple of these arguments at sentencing -- dealing with the application of the sentencing guidelines and determining the amount of drugs involved.  Other than making those arguments, he did not indicate whether he and his client had read and discussed the report.  Sent. Trans., pp. 20, 34-35.

13

Yet, *U.S. v. Carter,* holds that Rule 32(i)(3)(B) violations do not always necessitate another sentencing hearing:

> Our finding that the district court violated Rule 32(i)(3)(B) is not, however, the end of the analysis.  This court must also determine whether the district court's error was harmless....  For reasons explained below, both of Carter's objections clearly fail, and so the district court's failure to provide specific determinations was harmless.  Accordingly, remanding the sentence would only be a waste of judicial resources.  Our conclusion, however, should in no way be seen as undermining the requirements of Rule 32.  District courts are warned that they must continue to comply literally with Rule 32.  We stress that, given the specific circumstances in this case, the error was harmless because Carter's arguments cannot possibly afford him relief.

374 F.3d 399, 408 (6th Cir. 2004).

Here, as in *Carter*, Petitioner's objections were accommodated in Judge Rosen's determination of drug quantities and Petitioner has made no argument against the PSI on his leadership role for the four point enhancement that would have affected the sentencing.[6]  As explained above, he cannot prevail on a claim that his counsel was ineffective for failing to raise certain objections.  *Carter*'s judgment was vacated when the Supreme Court granted cert and remanded the case for further consideration in light of *Booker*.  Other cases citing *Carter* for that same proposition seem to be on strong legal footing.  *See U.S. v. Robinson*, 390 F.3d 853, 889 (6th Cir. 2004), *U.S. v. Springs*, Nos. 03-6473, 02-6474, 02-6475, 2004 WL 1753532 at **4 (6th Cir. Aug 04, 2004) (unpublished).

Petitioner raises arguments relating to the PSI report because of the possibility that the recited events raised his sentence.  As explained above, because Judge Rosen stated that he would

---

[6] The Court of Appeals specifically addressed the sufficiency of the evidence upholding Petitioner's leadership role in sentencing.  2001 U.S. App. LEXIS 10766 (2001) (unpublished), at 7-8.

not consider conduct of which Petitioner was not convicted, any Rule 32(i)(3)(B) error was harmless.   To the extent that Petitioner is arguing that certain factors might have led Judge Rosen to give him a lighter sentence had he known that the Sentencing Guidelines were advisory and not binding, those arguments are addressed below.   Yet, it should be noted that *Carter* was a direct appeal to which *Booker* is applicable.   As will be analyzed in more detail, *Booker* is not retroactive to cases on collateral review such as this one.   Regarding the Plaintiff's Rule 32(i)(3)(B) claims in this section, a rehearing in light of Judge Rosen's failure to specifically inquire whether Petitioner and his counsel reviewed the PSI report would be "a waste of judicial resources" and any such error was harmless under *Page* and *Carter* cases.

### iii.    *Claims relating to Griffin's bail hearing*

Petitioner objects to Mr. Rosenberg's decision not to cross-examine co-defendant David Griffin for bias.   At the bail hearing, Mr. Griffin testified that he believed Petitioner had "something to do with" his being shot.   Rather than pursue this line of questioning on Griffin's bias against Petitioner, the Petitioner's attorney and prosecutor stipulated that Petitioner did not shoot Mr. Griffin.   At the February evidentiary hearing, Plaintiff testified that this was

> a very important issue to me because Griffin is the one that gave me all these drugs.   He's the one that said I was a leader.   I mean, he's the one – he's the key witness of the whole case.   And by bringing that stipulation, it really kind of hurt me I believe.   It really kind of hurt me because I couldn't show his credibility.   And if could have showed the way he lied at the bond hearing, that the jury could have thought different.
>
> Feb. Evid. Hrg., pp. 51-52.

### iv.    *Failure to cross-examine Griffin for bias*

It appears that the Sixth Circuit was incorrect when it stated that there were no motions or discussion on the record regarding this issue.   Trial counsel filed a motion for judgment

15

notwithstanding the verdict which raised the issue of the district court's refusal to allow the transcript of Griffin's testimony from the bail hearing based on Rule 608(b)'s prohibition of extrinsic evidence to prove that Griffin lied at the bail hearing. Mot. for Acquittal Not. Verd., p. 2, Brief, pp. 7-9 (Docket # 108). This matter was discussed at the beginning of the sentencing hearing. Sent. Trans., pp. 2-11 (Docket # 154).

There, the district court judge explained that his understanding was that Petitioner wanted to introduce the bail hearing transcript as extrinsic evidence on cross-examination that Griffin lied at the bail hearing, a prior "bad-act" subject to the restrictions on extrinsic evidence under FED. R. EVID 608(b) if the "bad act" is denied by the witness. The judge stated that he did not believe the issue was one of bias and that the testimony was not clear on the issue of bias anyway.[7] Counsel argued that the issue all along was that Griffin was biased against Petitioner and that blaming Petitioner for supplying the drugs would be to Griffin's advantage.

The rules of evidence include the principle, incorporated in FED. R. EVID 608(b), that events collateral to the central issues of the case cannot be proven by extrinsic evidence. Here the collateral event of Griffin's alleged prior lie could not be proven by "extrinsic" evidence. There was no indication that William Griffin ever admitted that he had lied in telling anyone that Petitioner had shot him. Had Griffin admitted that he had lied about the Petitioner having shot him, or lied about his true belief that the Petitioner had been involved in his being shot, such a "lie" would be a

---

[7] Griffin's testimony at the bond hearing regarding Petitioner's involvement in the shooting is as follows:

> Q. What did you say to Anthony Taylor [Petitioner] about being shot?
> A. I said he probably had something to do with it.
> Q. What did he say to you?
> A. He didn't say anything to me. He just looked at me.
> Q. Did you believe that he had some responsibility of you getting shot?
> A. Some of it.

Pet., Ex. 2, p. 24.

"[s]pecific instance[] of conduct" probative on "untruthfulness" and thus a possible subject of cross-examination under FED. R. EVID. 608(b). Yet, again, there is absolutely nothing to suggest that, if asked at Petitioner's trial, Griffin would admit to having lied at his bond review hearing before Judge Gilmore. Thus, if the court had allowed inquiry at trial, Petitioner's attorney would have to live with the answer given by Griffin, because FED. R. EVID. 608(b) clearly states that showing that a witness lied on a prior occasion "may not be proved by extrinsic evidence."

Thus, this impeachment would only succeed if Griffin had or likely would at trial admit that he had earlier lied about who he believed had shot him. If at trial he denied this prior "bad act" reflective of untruthfulness, Petitioner's counsel would have to live with the answer because he could not bring in any extrinsic evidence to show Griffin had lied.

Here Petitioner apparently thought that the testimony of the other witnesses who testified before Judge Gilmore at the bond review hearing was admissible extrinsic evidence. Yet, the transcript of their former testimony would be inadmissible hearsay at Petitioner's trial, so they would have to testify live. Yet, it is precisely this type of "extrinsic evidence" on a collateral matter that FED. R. EVID. 608(b) disallows to avoid having extensive and confusing trials within a trial on a collateral matter.[8]

The Court might have allowed Mr. Rosenberg to ask Mr. Griffin whether he thought Petitioner had shot him to show that Griffin was "biased" against a person he thought had tried to

_____

[8] Even if Griffin had admitted before Judge Gilmore that he had lied, unless he again admitted that on cross-examination at Petitioner's criminal trial, a transcript of his prior testimony before Judge Gilmore would also be "extrinsic evidence" precluded by FED. R. EVID. 608(b). The Gilmore hearing transcript of Griffin's testimony (had he admitted he lied at that hearing) might be allowed to be used as a prior inconsistent statement if Griffin said one thing at the bond review and another at the criminal trial. Yet, that prior inconsistent statement – if allowed – would not be allowed to be proof that the prior (bond review) testimony was true, but could only be considered by the jury on the credibility issue that Griffin at times gives inconsistent versions of events.

kill him.  Yet, if the defense counsel's strategy was to keep the jury from speculating on whether Petitioner was a shooter as well as a drug dealer, asking Griffin such a question would be folly, because it would introduce to the jury the very suspicions that the Rosenberg/Parker stipulation had been made to avoid – i.e. that Petitioner did not shoot Griffin.

Petitioner's counsel did question Griffin about his plea bargain, suggesting that it was in his favor to testify against Petitioner and implying that Griffin was lying about Petitioner's involvement. Griffin Test., pp. 28-35 (Docket # 146).  Additionally, although not using the specific instance of the shooting, counsel elicited from Griffin that he was not friendly with Petitioner.[9]  After the jury verdict, counsel took measures to challenge the court's decisions regarding the admissibility of the transcript.

Petitioner has a high burden in showing that his trial counsel was ineffective in this regard. Not only did he attempt to introduce the testimony that Plaintiff complains should have been allowed, but he also used other ways to discredit Griffin (using his deal with the government, etc.). Following through with Plaintiff's demands would have been risky, as the jury may have thought that Plaintiff was involved in both drugs and shootings.  Therefore, it is not an incidence of constitutionally ineffective counsel not to cross-examine Griffin on his beliefs that Petitioner had something to do with his being shot.

---

[9] On cross-examination, the following line of questioning took place:
Q.  Is one of those friends you're going to do thirty-five years for?
A.  Would I do thirty-five years for?
Q.  For one of your friends?
A.  Yes.
Q.  You would, huh?
A.  Yes, yes.
Q.  But not for Anthony Taylor [Petitioner]?
A.  Not for Anthony Taylor, no.
Griffin Test. at 34 (Docket # 146).

Decisions regarding the scope of cross-examination, like the decision of what witnesses to call, are matters of trial strategy committed to counsel's wide discretion, and thus difficult to attack on habeas review. *See Fugate v. Head*, 261 F.3d 1206, 1219 (11th Cir. 2001); *Dows v. Wood*, 211 F.3d 480, 489 (9th Cir. 2000); *Dell v. Straub*, 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002) (Friedman, J.). The mere fact that other avenues of impeachment may have existed does not render counsel ineffective; counsel need not "develop every bit of testimony through all available inconsistent statements." *Poyner v. Iowa*, 990 F.2d 435, 438 (8th Cir. 1993); *see also*, *Waters v. Thomas*, 46 F.3d 1506, 1514 (11th Cir. 1995) (internal quotation omitted) (counsel not ineffective even though "other testimony might have been elicited from those who testified."); *United States v. Kozinski*, 16 F.3d 795, 817 (7th Cir. 1994) (counsel not ineffective where counsel could have elicited additional impeachment information on cross-examination).

### v.    *Counsel's alleged failure to discuss stipulation with Petitioner*

At the February evidentiary hearing, Mr. Rosenberg testified that he and Petitioner had discussed his intention to enter into the stipulation that Petitioner was not involved in Griffin being shot. Because Mr. Griffin believed that Petitioner shot him, Mr. Rosenberg thought that the stipulation "went beyond what [he] could have gotten from Mr. Griffin."

Petitioner, on the other hand, testified that his counsel "didn't explain [the stipulation] to [him] period," and that he learned about it from Judge Rosen. He wanted the testimony about Griffin believing Petitioner shot him to come before the jury because Petitioner had witnesses there to prove that Mr. Griffin was lying. Two witnesses, Dorothy Woods and Terry Jones, were present at the shooting and could have testified that Petitioner did not shoot Mr. Griffin. Petitioner stated that these witnesses testified at his bond hearing. Feb. 2, 2005, Evid. Hrg., pp. 49-51, 53.

19

This issue essentially comes down to making a credibility determination between Petitioner and Mr. Rosenberg. Petitioner's credibility is undermined by his testimony that Dorothy Woods and Terry Jones testified at the Bond Hearing, while the Bond Hearing transcript contains no mention of these individuals.[10] His recollection that Ms. Woods and Mr. Jones testified at his bond hearing and could testify to Petitioner's absence during the shooting is the main argument Petitioner posits for why he was so damaged by the stipulation. If Petitioner's memory is inaccurate on this key point, it stands to reason that he may also not be properly recalling whether Mr. Rosenberg discussed the stipulation with him.

### vi.    *Failure to make bond transcript available on appeal*

Petitioner's claim here is that trial and appellate counsel were ineffective for not obtaining and including in the record and joint appendix, respectively, the transcript of Griffin's testimony. The district court previously obtained the transcript and the issue of its admissibility was briefed prior to trial. Sent. Trans., pp. at 5-8. Despite the ruling finding the document inadmissible, counsel filed a motion for acquittal notwithstanding the verdict, explicitly raising the issue of bias and arguing that the transcript should have been admissible. This issue was discussed at the sentencing hearing, where counsel was ultimately unsuccessful. While the trial judge did not preclude cross-examination on bias, it seems that counsel did not cross-examine Griffin on his belief of who shot him because the judge determined that the transcript was unavailable to him at trial.

Petitioner also argues that appellate counsel neither obtained the transcript, nor included it in the joint appendix and that, as a result, the Sixth Circuit refused to address this issue on direct appeal.

---

[10] Terry Jones testified at trial.

20

The issue on Griffin was discussed in the Petitioner's motion for acquittal notwithstanding the verdict and the discussion at the sentencing hearing.  Sixth Circuit Local Rule 30(f) states that the Joint Appendix should consist of, in relevant part, the docket sheet of the district court or any transcripts in the record relevant to effective understanding of the issues.  Petitioner alleges that he informed appellate counsel of the transcript and its importance, but counsel failed to include this in the joint appendix anyway.  FED. R. APP. P. 10(c) permits a party to provide its own version of unavailable hearing transcripts, subject to the district court's approval.  The Sixth Circuit explicitly stated that this was not done.

Yet, even if appellate counsel should have included the relevant transcripts,  the question of prejudice still exists.  Petitioner's argument seems to rest on his allegation that he had two witnesses who saw that he was not present at the shooting of Griffin .  Yet this does not show that Griffin was lying or disprove that Petitioner had "something to do with" Griffin's shooting.  Griffin did not testify that Petitioner shot him.  In fact, in his bond hearing testimony, he claims that "this guy named Frank" actually shot him.  Bond Hearing Trans., p. 23.  Mr. Griffin mentions Petitioner only after the prosecutor asked whether someone else had sent "Frank" to do the shooting, and Griffin recounted that he and Petitioner were on "shaky ground" because he owed money and that Petitioner had threatened that unless Griffin paid him the money, "he would go all out."  Therefore, it is possible, and even likely, for the jury to conclude that despite witness testimony that Petitioner was not present at the shooting, Petitioner arranged for someone else to do the shooting.  This not only links Petitioner with drugs and a shooting, which counsel sought to avoid through the stipulation, but could also bolster Griffin's testimony regarding Petitioner's role in the drug transactions in the minds of the jury.  It is not likely this issue would have resulted in a reversal had it been fully supported by transcripts.  Thus the prejudice element of *Strickland* is not met. *Strickland, supra*,

466 U.S. at 687.  The appellate court likely would uphold the trial judge's ruling.  Even if they did

not, any error is such that Petitioner would be unable to demonstrate to the Appellate Court that

there was "a reasonable probability that, absent the errors, the fact finder would have had a

reasonable doubt respecting guilt.  *Id.* at 695.[11]

## C.    Proper Sentencing Provision Claim

Petitioner's indictment held him responsible for fifty grams of cocaine base.  The jury needed

to find Petitioner responsible for some "measurable amount"of cocaine base.  Judge Rosen found

Petitioner responsible for 500 grams to 1.5 kilograms of cocaine base and sentenced Petitioner under

21 U.S.C. 841(b)(1)(A), which has a ten year mandatory minimum and sentencing range up to life

imprisonment.  Petitioner argues that he should have been sentenced under 841 (b)(1)(C), which has

a maximum sentence of twenty years.

Yet the judge did look at the totality of the evidence that had been presented, including

witness testimony, and audio/video/surveillance tapes, and found that Petitioner was involved with

at least 500 grams of cocaine base.  He stated that there was evidence that Plaintiff was probably

---

[11] Even if Griffin was discredited,  Petitioner still likely would have been convicted of the
second substantive distribution charge (the second distribution charge on which Petitioner was
convicted, Count 4, involved co-defendant Boyd – Griffin was not involved in that transaction).
The other prosecution witnesses, three DEA agents – one of whom conducted the deals and two
who conducted surveillance – all testified that after the deal, Griffin climbed into Petitioner's
blue Bronco, which Petitioner drove at the second transaction.  Only one witness positively
identified Petitioner as the driver.  The inference could be made that Petitioner was picking up
the dealer and collecting money as in the April 4, 1996, transaction involving Boyd (Count 4, on
which Petitioner was convicted).  Additionally, Boyd's testimony corroborates Griffin's in all
respects involving both the method of distribution over the years as well as procedures in the
specific deals on which Petitioner was charged in Counts 4 and 5.

Thus, even if the Appellate Court would have found this issue meritorious – which is not
likely – Petitioner would still have been convicted of Count 4, involving over 100 grams of
cocaine base.  He would also be subject to the same penalty on the conspiracy charge.  21 U.S.C.
§ 846.

responsible for even more drugs than was considered in determining his sentence.  Sent. Trans., pp. 25-34.

If the amount of drugs for which a person involved in a conspiracy to distribute is uncertain, the district court should err on the side of caution and try to determine the amount for which that person was likely responsible.  *United States v. Meacham*, 27 F.3d 214, 216 (6th Cir. 1994); *United States v. Zimmer*, 14 F.3d 286, 290 (6th Cir. 1994).  This amount must be supported by a preponderance of the evidence.  *Meacham*, *supra*; *Zimmer*, *supra*.  In *United States v. Copeland*, 321 F.3d 582 (6th Cir., 2003) a defendant challenged the district court's assessment of the quantity of cocaine base attributable to him.  *Id.* at 604.  There, the district court relied on the testimony of a witness that the defendant was involved in the distribution of "'hundreds of ounces' of cocaine," eighty percent of which was crack cocaine, and that several documented sales included multiple ounces.  *Id.* at 605-606.  The district court then determined "hundreds" meant at a minimum, 200 ounces, twenty percent of which would be 40 ounces.  *Id.*  The Sixth Circuit held that the district court properly relied on the testimony in determining this amount and found no clear error.  *Id.* at 606.

Here, the jury obviously credited the testimony of Boyd and Griffin that Petitioner supplied them with cocaine base for the transactions upon which Counts 4 and 5 were based.  Even if the transcript of Griffin's bond hearing testimony were used to impeach on bias, the testimony of the DEA agents indicated that Petitioner was involved in the specific transaction upon which Count 5 was based to the same extent as in the transaction upon which Count 4 was based; moreover, Boyd's testimony corroborated that of Griffin with respect to Petitioner's role in the overall conspiracy.

Griffin testified that Petitioner supplied him with anywhere between 1/8 oz. and 1/2 oz. of cocaine base, up to three or four times a day, between summer 1995 and August 1996.  Griffin Test.,

pp. 10-13 (Docket # 146).  Assuming the minimum – 1/8 oz. three times daily for one year (3.5 grams  x 3 times daily  x  365 days) – through Griffin alone, Petitioner would have been responsible for 3,832.5 grams.  Boyd testified that Petitioner supplied him with similar amounts between 1995 and early 1998.  Boyd Test., pp. 73-78 (Docket # 146).  Although this is approximately a three year period, because Boyd testified to receiving drugs from Petitioner less frequently, this calculation will also assume a one year period.  Again assuming the minimum amount (3.5 grams  x  365 days), Petitioner would have be responsible for at least 1277.5 grams through Boyd alone.  These calculations do not take into account that both Boyd and Griffin testified to regularly receiving amounts of cocaine base of two and four times the amount used in the calculation.  Although these are rough calculations, they serve as an illustration that holding Petitioner responsible for at least 500 grams was by no means unreasonable.  Additionally, Boyd testified to seeing Petitioner in possession of nearly 500 grams at one time.  Boyd Test., p. 81 (Docket # 146).

Petitioner also seems to be arguing that because the jury did not specifically find Petitioner responsible for more than 50 grams, it was improper for the judge to sentence him for conduct not specifically found by the jury.  This argument is addressed below.

### D.   _Booker_ claim

Petitioner argues that he received a sentencing enhancement which, in light of *Blakely v. Washington,* 124 S. Ct. 2531 (2004) and *United States v. Booker*, 125 S. Ct. 738 (2005), unconstitutionally raised his sentence.  *Booker* applied *Blakely* reasoning to the Federal Sentencing Guidelines, holding that "any fact [other than a prior conviction] which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker* 125 S. Ct. at 756.  Because the Sixth Circuit has ruled that *Booker* is not retroactive to cases on post-

24

conviction review, Petitioner's *Booker* claims are unsupported. *Humpress v. United States*, 398 F.3d 855, 860-863 (6th Cir. 2005); *Thelen v. United States*, 2005 U.S. App. LEXIS 5050 (6th Cir. 2005); *Varnes v. United States*, 2005 U.S. Dist. LEXIS 4322 (N.D. Ohio 2005).[12]

### E.   **Cumulative effect**

Finally, at the evidentiary hearing, Petitioner argued that the cumulative effect of the alleged errors are grounds for reversal, even if individually they are not. For this proposition, Petitioner cites *Lundy v. Campbell*, 888 F.2d 467 (6th Cir. 1989), a habeas case involving prosecutorial and procedural errors in a state trial. *See also U.S. v. Hines*, 398 F.3d 715 (6th Cir. 2005) ("in some situations cumulative error might be enough to support reversal"); *Walker v. Engle*, 703 F.2d 959 (6th Cir. 1983) (holding that numerous improper trial techniques by prosecution had the cumulative effect of prejudicing the jury against defendant). Yet in each of these cases, the court granted the requested relief only after satisfying a high bar of prejudice, and only after considering those defects that the court found to be clearly erroneous. In *Lundy*, for instance, the court found three incidents of error, but found that even together they did not prejudice defendant. *Lundy*, 888 F.2d at 481. In the present case, Plaintiff has not shown any prejudice. Here, the record shows effective assistance of counsel and a vigorous defense on his behalf. Any challenges to his trial attorney's choices that

---

[12] As noted above the Sixth Circuit did address Petitioner's *Apprendi* claim on direct appeal under the plain error doctrine. It acknowledged that Petitioner's 292 months sentence exceeded the minimum 240 months available under 21 U.S.C. § 841(b)(1)(C). Yet, following *United States v. Page*, 232 F.3d 536 (6th Cir. 2000), the Sixth Circuit held that because Petitioner was convicted of distribution under § 841 and conspiracy under § 846, a remand for re-sentencing would require the convictions to run consecutively, rather than concurrently, until they reached the minimum guideline range. Thus, if found that the *Apprendi* error did not prejudice Petitioner nor affect substantial rights under the plain error rule. While the Sixth Circuit Court might have ruled otherwise on the prejudice issue after *Booker* and *Blakley* removed the binding effect of the Sentencing Guidelines, that relief is only available on direct review and not on collateral challenge.

have any merit did not result in any prejudice.  A review of the case indicates that Plaintiff received a fair trial.  Therefore, Plaintiff's claims of cumulative effect must also fail.

## III.  RECOMMENDATION

Accordingly, IT IS RECOMMENDED that Petitioner's motion to vacate, set aside, or correct his sentence be DENIED.  Any objections to this Report and Recommendation must be filed within ten (10) days of its service.  28 U.S.C. § 636(b)(1); E.D. Mich. LR 72.1(d)(2).  Failure to file objections within the specified time constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Ivey v. Wilson*, 832 F.2d 950, 957-58 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: August 10, 2005                    s/Steven D. Pepe
Ann Arbor, MI                             United States Magistrate Judge


Certificate of Service

I hereby certify that copies of this order were served upon the attorneys of record by electronic means or U. S. Mail on August 10, 2005.

s/William J. Barkholz
Courtroom Deputy Clerk

26

**IV.**   <u>**APPENDIX**</u>

The following arguments were posited and briefed before Petitioner was represented by counsel. Since he has been represented, these arguments have not been raised. Therefore they have likely been waived. Even if Petitioner did not wish to waive his prior arguments, none of them afford him his desired relief.

**A.**   <u>**Failure to communicate plea offer**</u>

The government offered a 14 year, Rule 11 plea bargain. Petitioner alleges that he expressed his wish to accept the plea offer if a more favorable offer was not made, but that counsel never communicated his desire to accept the plea. He asserts that counsel told him that because he was a first time offender, the government would make an offer of 10 years. Petitioner claims that he told counsel that if the government did not offer a 10 year deal, he wished to accept the 14 year offer. He claims that he mentioned this many times but counsel failed to convey this to the government.

The government provided affidavits and testimony of Petitioner's trial counsel and his former law clerk refuting Petitioner's claims. The government argues that Petitioner's claim here is unreliable because he never mentioned this issue before, either at sentencing, post-trial motion, or on direct appeal with a different attorney.

Petitioner's testimony on this matter directly conflicts with Mr. Rosenberg's testimony and that of Mr. Rosenberg's former law clerk, attorney Eric Tang. July 21, 2004, Evid. Hrg., p. 89. Petitioner appears to have admitted at the February 2, 2005, hearing that he chose not to accept the plea, because he now wishes to blame his attorney's ineffectiveness for misleading him to not accept

27

the plea.[13]  Moreover, the credibility of the Petitioner is further undermined as explained in the body of this report and recommendation.  Finally, his pre- and post-trial behavior is inconsistent with his desire to accept the plea.  Had he actually intended to enter into a plea, he would not likely have continued to help his attorney prepare for trial, and he would likely have informed the judge or the appellate court of this oversight.

### B.   Failing to object to conspiracy instruction

Here, Petitioner asserts that the district court failed to include the element of specific intent in the jury instruction regarding conspiracy and that trial counsel was ineffective by failing to object to this omission.  The government simply argues that the instruction that was given adequately set forth the required mental state of each conspirator.

Jury instructions regarding *mens rea* are proper despite not including the words "general intent" or "specific intent" as long as they describe or define the necessary mental state.  *United States v. S & Vee Cartage Co.*, 704 F.2d 914, 919 (6th Cir. 1983) ("Judge Churchill decided not to use either of the terms 'specific intent' or 'general intent' in the instruction on § 1027.  Instead, he instructed on the specific mental state referred to in the statute – the concept of an act done 'knowingly.'").  *See Liparota v. United States*, 471 U.S. 419, 434 n.16 (1985) ("A more useful instruction might relate specifically to the mental state required . . . and eschew use of difficult legal concepts like 'specific intent' and 'general intent.'"); *United States v. Mullins*, 22 F.3d 1365, 1369 (6th Cir. 1994) ("The district court's instructions had the added advantage of accurately conveying

---

[13] **Q:** Do you believe that if Mr. Rosenberg told you the chances of winning at trial were less than fifty percent, you would have done something differently?
**Taylor:** Yes.
**Q:** And what is that?
**Taylor:** I mean, I would have– like I been telling for the longest, about the fourteen-year plea.  I would accept it." (Feb. 2, 2005, Evid. Hrg. at 44)

the law without subjecting the jury to a confusing discourse on the difference between 'general' and 'specific' intent.").

Here, the district court instructed the jury that to convict Petitioner of conspiracy, they must find that he "knowingly and voluntarily joined in the conspiracy." Sent. Trans., p. 73 (Docket # 147). The court further stated that:

> the government must prove that [Petitioner] knew [of] the conspiracy and the purpose and that he voluntarily joined it intending to help advance or achieve its goals. This does not require proof that [Petitioner] knew everything about the conspiracy. . . . [P]roof that [Petitioner] simply knew about the conspiracy or was present at times or associated with members of the group is not enough, even if he approved of what was happening or did not object to it.

*Id.* at 75. "Specific intent" requires an intent to commit a crime rather than the unknowing commission of a criminal act. Although the district court never used the words "specific intent," the instructions to the jury clearly establish that to find Petitioner guilty of conspiracy, it was required to find that he knew he was joining a conspiracy and did so with the intent to achieve or carry out its goals – here, the distribution of cocaine base. Therefore, it is clear that Petitioner is not entitled to relief on this claim.

## C.    Failure to file for re-hearing based on *Apprendi*

Here, Plaintiff argues that counsel was ineffective because counsel should have sought a rehearing from the Sixth Circuit. Prior to *Blakely/Booker,* the Sixth Circuit would not have reheard Petitioner's case. In the 25 days Petitioner had to file for such a rehearing under Fed.R. App. P 44 after the April 11, 2001, decision, this would not have been a viable rehearing motion. It is currently unavailable because the *Blakely/Booker* issues cannot be raised in a § 2255 habeas petition.

## D.    Failure to request a buyer-seller instruction

Petitioner argues that he merely fronted cocaine base to Griffin and Boyd (two co-defendants who both pled guilty to conspiracy to distribute), but was not involved in the overall conspiracy. Thus, he claims that his counsel should have requested a buyer-seller instruction to remind the jury that distribution of drugs alone is not itself a conspiracy. Essentially, Petitioner argues that if such an instruction had been given, there is a reasonable probability that the jury would not have found him guilty of conspiracy. The government argues that the evidence of conspiracy was overwhelming.

While the facts of any given case may indicate that a buyer-seller instruction may be appropriate, as long as the district court properly instructs the jury on the "elements of conspiracy and requirements for membership in a conspiracy," such an instruction is unnecessary. *Riggs v. United States*, 209 F.3d 828, 833 (6th Cir. 2000) (citing *United States v. Stephens*, 492 F.2d 1367, 1377 (6th Cir. 1974)). The district court gave an adequate conspiracy instruction. Therefore, a buyer-seller instruction was not necessary, and counsel cannot be found to be ineffective for failing to request such an instruction.

Even had such an instruction been warranted, is not likely that, on these facts, the jury would have determined Petitioner to be not guilty of conspiracy. Plaintiff cites the trial testimony of Griffin and Boyd to support this claim. Yet*,* their testimony indicates otherwise. Griffin testified that between 1995 and 1996, Petitioner would front him an eight ball (1/8 oz.), a quarter ounce, or a half ounce of cocaine base, which Griffin would break up and sell. Griffin Test., pp. 10-13 (Docket # 146). When he ran out, Griffin would call Petitioner to bring him more cocaine base; this happened three or four times a day. *Id.* at 11-12. After selling the drugs he was given, Griffin would then pay Petitioner; for an eight ball, Petitioner would take $100, while Griffin would keep $50. *Id.* at 10. Griffin also testified that at some point in 1996, Petitioner gave him three ounces at

once. *Id.* at 13. He testified further that Petitioner worked this way with twenty or thirty people, specifically naming himself, Boyd, Clarence Washington, a man named Sean, a woman named Delores, and Johnny Ray Jones. *Id.* at 16-17.

Boyd testified to the same pattern of dealing. Petitioner began supplying Boyd with small amounts of cocaine base, which Boyd would break up and sell. Boyd Test., pp. 73-74 (Docket # 146). On sale of a one and ½ gram package, Boyd would keep $35 and give $65 back to Petitioner. Eventually, Boyd testified that Petitioner would give him quarter ounces – about seven grams – of crack to sell. *Id.* at 77. This arrangement, in which Petitioner would supply Boyd every other day, lasted between 1994 or 1995 and early 1998. *Id.* at 77, 78. Boyd also testified that Petitioner did business with "several other people," including Clarence Washington and David Griffin. *Id.* at 82. He also indicated that Johnny Ray Jones was involved with Petitioner in this way. *See id.* at 83. Additionally, Boyd testified that at one point, he saw what he believed to be about two pounds of cocaine base in Petitioner's car. *Id.* at 81. While there is no support in the record that Petitioner dealt with twenty or thirty people on a regular basis, this testimony does support the conclusion that Petitioner was giving co-defendants drugs for resale.

In addition, *United States v. Lechuga*, 994 F.2d 346 (7th Cir. 1992), relied upon by Petitioner, held that a quantity of drugs deemed too large for personal use, without evidence of an agreement to commit a crime other than the initial sale itself, could not alone establish the necessary evidence for a conspiracy conviction. *Id.* at 347. In *Lechuga*, however, the Seventh Circuit also stated that if a middle-man aided a person he knew to be a drug dealer in "distributing drugs to at least one dealer farther down the chain of distribution," then the dealer and the middle-man were conspirators. *Id.* at 350. There, the court found that the defendant was involved in a conspiracy because the middle-man had a buyer for a particular amount of drugs and wanted the defendant to

supply that amount. *Id.* at 350-51. Here, Petitioner had drugs he wanted to sell, and he used others to distribute those drugs. The facts demonstrate that, rather than Petitioner simply selling the drugs to Boyd, Griffin, and others for personal use, they would then re-sell the drugs – a criminal act separate from the initial sale.

On these facts, a  buyer-seller instruction would not have spared Petitioner a conspiracy conviction.

### E.   Holding Petitioner responsible for entire conspiracy

Petitioner argues that the district court improperly held him responsible for the entire amount of drugs involved in the conspiracy without making particularized findings with respect to the scope of the agreement and the foreseeability of co-conspirator conduct in violation of *United States v. Campbell*, 276 F.3d 392 (6th Cir. 2002). The government argues that this issue was raised and rejected on direct appeal and is not cognizable in a § 2255 petition.

*Campbell* requires a district court to make particularized findings of both the scope of the conspiracy as well as the foreseeability of co-conspirator conduct in order to hold a defendant liable for the scope of the entire conspiracy. *Id.* at 400-01. Although the government argues that this claim should not be considered because it was rejected by the Sixth Circuit on appeal, *see Oliver v. United States*, 90 F.3d 177, 180 (6th Cir. 1996), this is incorrect. The only sentencing issues addressed by the Sixth Circuit were the assignment of a leadership enhancement and the *Apprendi* issue. While the *Apprendi* claim necessarily involved a discussion of the district court's determination of the amount of drugs attributable to Petitioner, the Sixth Circuit did not rule on the question of whether Petitioner was held liable for the entire scope of the conspiracy.

Nonetheless, Petitioner's claim fails. *Campbell* would only be beneficial to Petitioner in this case if the district court had, in fact, held him liable for the entire scope of the conspiracy. This,

however, was not the case.  At sentencing, the district court judge stated that he would *not* hold Petitioner responsible for the quantities of cocaine base involved in the March 4 and 19, 1996, transactions because the jury acquitted Petitioner on the charges involving those transactions.  Sent. Trans., pp. 35-36 (Docket # 154).  "[I]n this case, there was testimony to support [convictions on those charges] but the jury, for whatever reason, found otherwise as to the March 4th and March 19th transactions, and for that reason, I am not going to hold [Petitioner] accountable for those two quantity levels."  *Id.* at 35.  He also stated his reasons for finding Petitioner involved at least 500 grams, if not a lot more."  (May 3, 1999, Sent. Trans., pp. 35- 36.)

### F.   <u>Enhanced sentence as organizer or leader</u>

The sentencing guidelines allow a four point enhancement for a defendant's role as an organizer or leader of a conspiracy involving five or more people.  Here, Petitioner argues that the district court failed to identify the five people involved and that regardless, the evidence suggests that he had no leadership role.  The government argues that this issue cannot be raised here because it was raised and rejected on direct appeal.  Absent an intervening change in the case law, Petitioner cannot raise this issue in a § 2255 motion.  *Oliver v. United States*, 90 F.3d 177, 180 (6th Cir. 1996).

Petitioner cites *United States v. Anthony*, 280 F.3d 694 (6th Cir. 2002).  *Anthony* cites the Sentencing Guidelines which allow for a four point enhancement for a leadership role in a conspiracy involving five or more people, as well as *United States v. Shafer*, 199 F.3d 826, 830-31 (6th Cir. 1999), which states that only conduct involving an offense that could lead to a conviction resulting in prison time may be considered for purposes of determining the number of people involved.  *Anthony*, 280 F.3d at 698.  The Sixth Circuit then went on to adopt the Second Circuit rule for determining whether the "functional equivalent" of five people were involved in the conspiracy when there are fewer than five "knowing participants."  *Id.* at 699-701 (citing *United States v.*

*Carrozzella*, 105 F.3d 796 (2d Cir. 1997)).  Thus, *Anthony* could only be considered an intervening change in the case law affecting Petitioner if there were fewer than five knowing participants.

As the Sixth Circuit pointed out, Petitioner was charged with, and convicted of conspiracy to distribute in violation of 21 U.S.C. § 846.  Second Super. Indictment, Count 1 (Docket # 74).  Specifically named in this count were Griffin, Boyd, Clarence Washington, and Johnny Ray Jones.  All four of these co-defendants pled guilty to conspiracy.  See Docket #s 42, 64, 70, 73.  Based on their trial testimony, the district court was completely reasonable in determining that Griffin and Boyd were involved in a conspiracy with Petitioner.  Both Griffin (Griffin Test. pp. 16-17) and Boyd (Boyd Test. p. 82) testified that Petitioner supplied Washington and Jones in the same manner.  Jones' plea agreement specifically states that he assisted the conspiracy in helping Boyd with one of the deliveries.  Jones Plea Agmt. (Docket # 64).  Washington's plea states that he assisted Griffin on the transaction upon which Count 5 was based.  Washington Plea Agmt. (Docket # 42).  These four defendants, plus Petitioner, establish five knowing participants in the conspiracy.  Leadership over even two co-conspirators can justify a leadership enhancement as long as the conspiracy itself includes five or more participants.  *United States v. Owusu*, 199 F.2d 329, 347 (6th Cir. 2000) (citing *United States v. Ward*, 68 F.3d 146, 151 (6th Cir. 1995)).  Thus, *Oliver* precludes consideration of this claim.  Finally, at the sentencing, Petitioner attempted to interrupt the judge several times to inform him that he was not in a leadership role.  Sent. Trans., p. 41.  The judge stated that the evidence said otherwise, noting the a videotape showing Petitioner driving other people to a restaurant to do a drug deal, Petitioner performing surveillance by walking around the car, as well as a taped conversation.